[No. 16179.   Department One.   March 29, 1921.]

A. H. JAMES et al., *Respondents*, v. J. B. McMILLAN et al., *Appellants*.[1]

APPEAL (150)—REVIEW—EXCEPTIONS.   Where findings of fact are made in an equity case, they are as controlling as in an action at law, and are not reviewable on appeal unless exceptions are taken.

SAME (146, 147)—EXCEPTIONS—NECESSITY—STRIKING STATEMENT OF FACTS.   Where only a general exception was made at the conclusion of all the findings of fact made by the court, a motion in the appellate court to strike from the files the statement of facts and the abstract of the record must be granted.

HIGHWAYS (39)—ASSESSMENTS—BENEFITS TO PROPERTY INCLUDED. The cancellation by the superior court of an assessment for highway construction under the Donohue Road Law (Rem. Code, § 5731) of lands "within two miles of the center line of the improvement," on the ground that the "lands have no direct lateral highway connection with the said improved highway and have only a terminal road connection outside the improvement district," was erroneous, the only exception allowed being, as provided in Rem. Code, § 5739, subd. 4, and Laws 1917, p. 243, § 5, subd. 3, that "land within the improvement boundary whose natural outlet will not be in whole or in part over said road when improved shall not be separately assessed."

SAME (39)—ASSESSMENTS—PROPERTY INCLUDED—NATURAL OUTLET —STATUTES—CONSTRUCTION.   "Natural Outlet" as used in Donohue Road Law (Rem. Code, § 5739, subd. 7; Laws 1917, p. 243, § 5, subd. 3) does not mean a natural highway or bridge across a river, but a means of egress or exit from lands within a proposed improvement district.

[1]Reported in 196 Pac. 881.

Appeal from a judgment of the superior court for Whatcom county, Hardin, J., entered May 21, 1920, upon findings in favor of the plaintiffs, in an action for equitable relief. Reversed.

*Loomis Baldrey* and *Frank W. Radley,* for appellants.

*Bixby & Nightingale,* for respondents.

Holcomb, J.—Although this is an equity case and findings of fact were not necessary, the trial court, at the request of respondents, made and entered findings of fact, making those requested by plaintiffs and refusing those requested by defendants. When such procedure has been followed, we have held that findings in an equity case are as controlling as in an action at law; and furthermore, that exceptions must be taken to the findings of fact made by the trial court in order to obtain a review of the evidence on appeal. Rem. Code, § 383; *Rice v. Stevens,* 9 Wash. 298, 37 Pac. 440; *Crowe & Co. v. Brandt,* 50 Wash. 499, 97 Pac. 503; *Fender v. McDonald,* 54 Wash. 130, 102 Pac. 1026.

Appellants made only a general exception at the conclusion of all the findings of fact made by the court, as follows: "To which defendants except and their exceptions are noted." Respondents have moved to strike the statement of facts and the abstract of record from the files, upon the ground that no proper and sufficient exception has been taken to the findings of fact made by the court.

Under the state of the record, we have no option but to grant this motion and disregard the statement and abstract. *Fender v. McDonald, supra; Yakima Grocery Co. v. Benoit,* 56 Wash. 208, 105 Pac. 476; *Snohomish River Boom Co. v. Great Northern R. Co.,* 57 Wash. 693, 107 Pac. 848; *Meacham v. Seattle,* 69 Wash.

238, 124 Pac. 1125; *Pearson v. Gottstein Inv. Co.,* 112 Wash. 60, 191 Pac. 796; *Harbican v. Chamberlin,* 82 Wash. 556, 144 Pac. 717; *Beeler v. Barr,* 90 Wash. 258, 155 Pac. 1040.

Nor can we retain the statement of facts and the abstract of record, as requested by appellant, for the purpose of examining the statement of facts with reference to the propriety of the exclusion of evidence by the court. No such error is claimed here.

But we are obliged to consider the case upon the record and determine whether or not the findings of fact made by the court sustain the conclusions of law and judgment.

The action is to cancel certain assessments levied upon respondents' land, in pursuance of the provisions of what is known as the "Donohue Road Law," for the purpose of paying one-fourth of the expense of improving a certain public highway known as the "Lawrence-Nooksack" Highway, being highway No. 22 of Whatcom county, Washington. The Donohue Road Law is Ch. 123, Laws of 1893, p. 301, as amended by the acts of 1917 and 1919.

The court found, in finding No. 2, "that, on February 18, 1919, a petition was filed with the clerk of the board of county commissioners of Whatcom county, signed by numerous owners of land within the proposed improvement district boundaries, under the provisions of chapter 17, Remington & Ballinger's Annotated Statutes of Washington, entitled 'Roads improved or paved at the expense of land benefited,' and as amended by ch. 72, Laws of 1917, setting forth that a county road known as the Lawrence-Nooksack Road, and to be known as Highway No. 22, commencing at the end of the pavement of the Deming-Lawrence Road, thence along county roads No. 75, No.

6—115 WASH.

193, No. 87, No. 88 and No. 201 to connection with road No. 84, thence along road No. 84 and following the general course of said road, to a point near the Permanent Highway No. 4A, a distance of about 5.3 miles, is necessary for the public convenience and welfare.'' It is further found that, on February 19, 1919, an order was made by the county board for a hearing upon the petition for the improvement to be held on March 11, 1919, and notice was duly given thereof; that a resolution was thereafter duly adopted by the board to improve the highway described, and that further proceedings were had under the statutes for the improvement of such highway No. 22, and for providing the cost and expense of improving the same; that appraisers were duly appointed by the county commissioners, who duly qualified and entered upon their duties for the purpose of assessing the benefits and estimating the damages to property affected by the improvement, and that the appraisers, on October 14, 1919, filed with the clerk of the county board their reports and findings thereon, and notice was thereafter duly given that, on November 7, 1919, at 10 o'clock a. m. a hearing would be had on the report of the engineer and the report of the appraisers awarding damages and assessments, at the office of the county commissioners, at which time and place all persons affected by the proceedings might appear and show cause why the reports of the engineer and the appraisers should not be approved and adopted.

The court further found, in finding No. 3, that the plaintiffs, twenty-four in number, are the owners of the pieces and parcels of land specifically described in paragraph three of their complaint and specifically described in the decree herein, and that such lands are within the boundaries of the improvement of highway

No. 22, and have been assessed by the appraisers in the respective sums set opposite the respective descriptions of the lands, in paragraph three of the complaint herein, and such lands are each and all included in the report and findings of the appraisers as filed with the clerk of the county board.

Finding No. 4 is:

"That each and all of plaintiffs' lands lie on the westerly side of the Nooksack river, and that said highway No. 22 lies wholly on the easterly side of said river, and said river runs in a northwesterly direction and traverses the entire length of said improvement district. That the only bridges across said river which are situate near said improved highway are the Nugent Bridge, which lies south of the improvement district, and the Everson Bridge, which crosses the river near the north boundary line of said improvement district and affords connection with the town of Everson. That said town of Everson lies west and north of the northern terminus of said improved highway. That the said river is too wide and deep to be forded, and there is no bridge between said Nugent Bridge and said Everson Bridge and no ferry, and no other means of crossing said river. That plaintiffs' lands have no direct lateral highway connection with the said improved highway and have only a terminal road connection therewith, the termini of said improved highway being reached from plaintiffs' lands by means of highways which run north and south and outside of the improvement district, and form a circuitous connection with the termini of said improved highway."

It was further found that each of the plaintiffs filed with the clerk of the board of county commissioners exceptions and objections in writing to the report and findings of the appraisers and to the special assessments, and that a hearing was had thereon before the county board, and that their objections and exceptions were overruled and denied by the county board, who approved and adopted the report of the special assess-

ments, and that the special assessments have been entered upon duplicate assessment rolls and filed in the office of the county treasurer of the county, and the county treasurer is proceeding to enforce collection of the same against the plaintiffs' lands.

From those findings the court concluded that the lands of the plaintiffs, so especially assessed for the improvement of highway No. 22, are not specially benefited within the meaning of the constitution and statute, because they have no natural outlet, in whole or in part, from the improved highway; that none of said lands are subject to the special assessments, but come within the exception contained in the proviso of Rem. Code, § 5739, subd. 4, and Laws of 1917, p. 243, § 5, subd. 3; that the action of the county board in levying the special assessments against their lands was arbitrary and without authority of law, and that such special assessments ought to be cancelled and annulled, and the treasurer of the county ought to be enjoined from collecting or attempting to collect the same.

The court thereafter entered its decree cancelling and annulling the special assessments and special levies made against the lands of plaintiffs described in the complaint, and enjoined the county officers from collecting, or attempting to collect, such special assessments, or any part thereof, and from reassessing, or attempting to reassess, the lands for special benefits for the improvement of highway No. 22.

The court's findings and conclusions are not sufficient to set aside the assessments against the lands of plaintiffs for special benefits for the improvement of highway No. 22 because of the inclusion of the lands of the plaintiffs.

The statute, Rem. Code, § 5739, subd. 4, requires that the appraisers shall prepare a schedule which shall set forth:

"4.  The benefits assessed to the lots and lands lying within the proposed improvement boundary, listing each tract of land assessed, giving the number of acres thereof, the owner as shall appear of record, the estimated valuation of each tract exclusive of improvement, and the benefit assessed thereto, and the total amount of benefits assessed to lots and lands shall be one-fourth of the whole estimated cost of the proposed improvement: *Provided,* That the lots or tracts of land within the improvement boundary whose natural outlet will not be in whole or in part over said road when improved, shall not be separately assessed under the provisions of this clause."

The trial court's finding upon which he based the cancellation of the assessments upon plaintiffs' lands was that,

"plaintiffs' lands have no direct lateral highway connection with said highway and have only a terminal connection, the termini of said improved highway being reached from plaintiffs' lands by means of highways which run north or south and outside of the improvement district, and form a circuitous connection with the termini of said improved highway."

The proviso does not say anything about "lands having no direct lateral highway connection with the improved highway," and does not provide that only such lands as have direct lateral connection with the improved highway within the two-mile zone provided for by the statute on either side of the center line of the improved highway shall be assessed.  If that were the provision of the statute, no permanent improved highway could be constructed by any county, under the improvement district law, unless direct lateral highway connections were made between the improved main highway and each tract of land to be assessed within the two-mile zone on each side of the center line of the proposed highway.  Such requirement of

the law would very generally well-nigh render pro-
hibitive the construction of permanent arterial high-
ways because of the very great number of lateral high-
ways to each tract of land assessed that it would be
necessary to construct. The cost of the whole system
would render the construction prohibitive in most
cases. The statutes under which the improvement was
proposed by the county provide, in § 5731, Rem. Code,
that the words " 'territory (or property) particularly
benefited,' as used in this chapter, shall be construed
to include, in addition to the lands lying within the two
miles on either side of the improvement, all cities,
road districts or townships which will be subject to
assessment for the improvement."

The above constitutes a legislative declaration that
lands within two miles of the center line of the im-
proved road shall be deemed particularly benefited.
Exceptions are made when they are within other im-
provement districts already established, or within in-
corporated cities or towns.

The theory of the court that, because the Nooksack
river flows from one end to the other of the proposed
improvement district and is wide and unfordable and
has bridges only outside the limits of the district at
either end, and that these twenty-four landowners,
who are interspersed among other landowners on that
side of the river, have no direct lateral highway con-
nection with the highway when improved, they there-
fore have no "natural outlet, in whole or in part," over
this improved road, cannot be logically sustained. If
the theory of the trial court is right, it would be im-
material whether there was any such a natural barrier
as the river in this case; for, if the improved highway
proposed went through a region where there were no
lateral highways radiating from it in either direction,

so that landowners situated on the outside of the two-mile zone on either side, and having a road fronting them on that side, would be compelled to go to the end of the district in order to reach the improved highway, that condition would be as much of a barrier as the natural barrier in this case. In other words, it would be a legal barrier, under the conception of the trial court as to the effect of the proviso. The proviso excepts from the separate assessments for special benefits from the proposed improvement district, "lots or tracts of land within the improvement boundary whose natural outlet will not be in whole or in part over said road, when improved." "Natural outlet," in this statute, cannot be construed to mean a natural highway or a natural bridge across the Nooksack river, but "natural" must mean "likely to happen, and for that reason should be foreseen; arising under the ordinary operation of physical laws; resulting in the ordinary course of things; such as occurs in the ordinary state of things." 29 Cyc. 280. And "outlet" means, of course, "a passage or vent for escape or discharge; means of egress; an exit, or a place at or through which one passes outward." New Standard Dictionary.

The juristic meaning of these words "natural outlet" does not differ from the vernacular. If the theory of the trial court is correct, then, if the county should provide, in connection with the improvement of the permanent highway contemplated, one or more bridges across the Nooksack river to the landowners on the opposite side from the improvement, they could not be assessed because that would be an artificial outlet, not a natural one. Nor is the theory of the trial court correct that because some of the twenty-four landowners complaining herein would be compelled to travel from something over two miles to something over four

miles to get from their tracts of land to the terminal of this improvement district and reach the improved highway proposed, that therefore they are more than two miles from the center of the improved highway. That cannot be any more nearly correct than the other theory, for the reason that there may be many of those landowners within this improvement district, on one side or the other, who have no "direct lateral highway" connecting them with the improved permanent highway proposed, but are compelled to go some distance one way or the other in order to reach a lateral connection with the improved highway, which would compel them to travel more than two miles, and yet be entirely within the district, and some of them might be four miles, as indicated by the trial court, from the center of the improved highway, by the route they are compelled to travel from their land. Yet the statute says: all lands within the improvement boundary of the proposed district, which "shall be construed to mean lines on either side of the road following the meanders thereof, and two miles distant from, or within a two-mile radius of any point on, the center line of improvement connected at the respective termini thereof by lines drawn at such angles respectively as will avoid the overlapping of the boundary by a new district, should the improvement of the highway be extended, and at the same time include all property lying within the distance aforesaid of any point on the center line of one or the other of the improvements:" Laws of 1917, p. 238, ch. 72. This is qualified, of course, by the exceptions in the proviso hereinbefore quoted.

Lots and tracts of land within the improvement boundary whose natural outlet will "in whole" be over the road when improved are lands of those who would necessarily travel no other road but the improved road,

who could not have egress from their lands except over the improved road; and those whose natural outlet would be ''in part'' over the road when improved are those lots or tracts of land ingress or egress to and from which might be partly over the improved highway and partly over some other, and who might be obliged to travel some distance before reaching the improved highway, but if they use it, or any part, as a natural or ordinary means of egress from the locality of their lands, that is an ordinary or natural egress or outlet, and they could not be excepted from the separate assessments of those within the boundaries of the district. The difficulties the owners of lots or tracts of land within the improvement boundary might encounter in reaching the improved highway, and their distance therefrom by travel, ought to be considered in assessing the special benefits to their lots or tracts of land and the special assessments against them; but this is not a proceeding to adjust unequal or inequitable assessments, but purely a proceeding to set aside the assessments against these plaintiffs entirely.

The trial court did not find that the landowners in this action would not naturally and ordinarily use the improved highway, in whole or in part, as their natural outlet from their localities, and such finding as the trial court did make did not justify the conclusions that the board of commissioners acted arbitrarily and upon a fundamentally wrong basis, and that the assessments upon the lands described in this action are illegal and void and should be cancelled.

We are convinced that the findings did not justify the conclusions and decree, and the decree is therefore reversed.

PARKER, C. J., FULLERTON, MACKINTOSH, and BRIDGES, JJ., concur.